IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN  DIVISION

KENDRA OWEN,                              :
                                         :
        Plaintiff,                       :
                                         :
v.                                       :        CIVIL ACTION FILE NO.
                                         :        3:08-CV-0036-LTW
I.C. SYSTEM, INC.,                       :
                                         :
        Defendant.                       :

## ORDER

This case is presently before the Court on Defendant I.C. System, Inc.'s and

Plaintiff Kendra Owen's cross motions for summary judgment.  Docket Entries [43, 54].

For the reasons outlined below, Defendant's Motion for Summary Judgment is

**GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.  Docket Entries

[43, 54].

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Kendra Owen (hereinafter "Plaintiff") filed the instant action on March

26, 2008, and amended her Complaint twice.  Docket Entry [1, 4,  34].  In Plaintiff's

Second Amended Complaint, she alleges that  Defendant I.C. System, Inc. violated the

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") when it

misrepresented the interest on her debt, sought to collect unearned interest, sought

interest in excess of the reported interest rate when it tried to collect unearned interest, erroneously added interest to Plaintiff's account when AAA had already charged interest for the same time period,[1] and because of the miscalculation of the interest, reported the incorrect amount of debt to the credit reporting agency. Docket Entry [1]. Plaintiff also complains that Defendant improperly charged her a 33% collection fee when it only charged her creditor a 30% collection fee. Docket Entries [1, 55, 57].

In Defendant's Motion for Summary Judgment, it contends that it is absolved of responsibility for any misrepresentation of information about the interest on the debt because Plaintiff cannot prove a knowing and intentional violation of the FDCPA and at most, it made a bona fide error. In support, Defendant contends that it properly relied upon Plaintiff's creditor for all information about the amount of interest Plaintiff owed and Defendant had no independent duty to investigate the amount of Plaintiff's debt.

Plaintiff contends in her Opposition to Defendant's Motion for Summary Judgment that Defendant's contention that she must prove that Defendant knowingly violated the FDCPA is without merit because the FDCPA is a strict liability statute. Plaintiff further contends that Defendant cannot rely on its ignorance of the facts about

---

[1]This claim stems from Plaintiff's belief that AAA charged her for a year's worth of interest when a year had not yet passed prior to submitting the claim for collection by Defendant. Plaintiff's belief, however, is not substantiated by the record.

2

the interest owed because it had not adopted policies and procedures to avoid the error and because Plaintiff put Defendant on notice of potential errors when she disputed the amount of the debt.  Plaintiff further contends that Defendant failed to catch the fact that Plaintiff's creditor was charging an interest rate which exceeded the amount of interest which could be charged as a matter of law.  Finally, Plaintiff contends that Defendant should have known that Plaintiff's creditor was charging an improper collection fee because the amount of the collection fee charged by Defendant was in Defendant's records.

## I.    STATEMENT OF FACTS[2]

Defendant I.C. System, Inc. is a debt collection company.  (DSMF ¶ 1).  All About Animals Veterinary Services, P.C. hired Defendant to collect sums of money owed to it

---

[2]All facts taken from Defendant's Statement of Material Facts as to Which There Exists no Genuine Issue to be Tried (hereinafter "DSMF") have been admitted or remain undisputed.  This Court must accept as admitted those facts in the moving party's statement that have not been specifically controverted with citation to the relevant portions of the record by the opposing party.  LR 56.1B.2(2), (3), NDGa.  Subjective perceptions, conclusory allegations, or allegations that are otherwise unsupported by record evidence do not create genuine issues of material fact in order to withstand summary judgment.  See Chapman v. AI Transp., 229 F.3d 1012, 1051 n.34 (11th Cir. 2000) (en banc); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989).  Thus, this Court will not consider any fact (1) not supported by citation to evidence (including a page or paragraph number); or (2) stated as an issue or legal conclusion.

after Plaintiff failed to pay for veterinary services it provided to her cat.  (DSMF ¶¶ 2, 3; Affidavit of Sue Johnson, hereinafter "Johnson Aff.," ¶ 5; Oct. 15, 2008, 30(B)(6) Deposition of All About Animals Veterinary Services by Susan Ellis, hereinafter "AAA Dep.," 4-5).

A.     AAA Hires Defendant to Collect Plaintiff's Debt

On March 27, 2007, All About Animals Veterinary Services, P.C., hereinafter "AAA," requested that Defendant collect the amount owed by Plaintiff pursuant to the terms of the agreement between AAA and Defendant.  (Johnson Aff. ¶¶ 5, 6, Ex. A). Under the agreement, AAA agreed to pay 33% of all amounts collected on each consumer account.  (Johnson Aff. ¶ 7, Ex. A, p. 1).  Defendant also advised AAA within the agreement between them as follows:

> We need accurate account information and proper authorization.  Provide accurate information on each account and promptly report any payments you receive on accounts placed with us.  Place only amounts over $25 that are validly due and owing by the debtor indicated. This applies to the principal, any charges added to the principal, and any rate of interest you request to be accrued.  We may limit the rate of interest or other charges you have added to an account or refuse to add any if we believe we need to do so to operate lawfully.  You must ensure that you have any consents &/or authorizations necessary for you to share information with us.

(DSMF ¶ 6; Johnson Aff. ¶ 8, Ex. A, p. 1).

AAA informed Defendant that Plaintiff owed $408.72 in principal, a $134.87

collection charge, and $28.61 in interest for a total charge of $572.20.  The letter also

provided that the balance due was as of the date of the letter and that the amount may

change "due to interest or other charges that may be added to the account after the date

of [the] letter."  (Owen Dep., Ex. 3).  Thus, on March 28, 2007, Defendant wrote

Plaintiff, attempted to collect $572.20 and explained the charges.  (Deposition of Kendra

Owen, hereinafter "Pl. Dep.," 14, Ex. 3).  On April 13, 2008, Plaintiff responded that she

disputed the amount of the debt.  (Pl. Dep., Ex. 3).

  B. <u>Plaintiff Disputes the Debt</u>

  Defendant notified AAA in writing on April 23, 2007, that Plaintiff disputed the

amount of the debt and requested that AAA provide verification of the indebtedness.

(DSMF ¶ 11; AAA Dep., Ex. 5).  AAA provided Defendant with (1) its estimate of

services to be performed; (2) medical records; (3) Plaintiff's account summary; (4) a

promissory note executed by Plaintiff; and (5) a veterinary client registration form signed

by Plaintiff explaining the clinic's collection policies.  (AAA Dep., Ex. 2; DSMF ¶ 12).

Defendant forwarded the information to Plaintiff on May 9, 2007.  (DSMF ¶ 13).

  Plaintiff's signed veterinary client registration form, in which she indicated her

assent to be charged interest at the rate of 1.5% per month or 18% per year in the event

her account went to collection.  (Pl. Dep. 18, Ex. 6, p. 25).  Plaintiff's account summary

reflected that AAA charged Plaintiff the following charges:

| Date | Description | Charge | Amount Due |
|------|-------------|--------|------------|
| Balance | | | 480.10 |
| 9/27/06 | Finance charge | 7.20 | 487.30 |
| 9/30/06 | Additional service for Pet | 42.76 | 530.09 |
| 9/30/06 | Payment | (145.00) | 385.09 |
| 11/4/06 | Finance charge | 5.78 | 390.87 |
| 12/29/06 | Finance charge | 5.86 | 396.23 |
| 2/9/07 | Finance charge | 5.95 | 402.68 |
| 3/27/07 | Finance charge | 6.04 | 408.72 |
| 3/27/07 | 33% Collection charge | 134.87 | 543.59 |
| 3/27/07 | 7% Interest | 28.61 | 572.20 |

(Pl. Dep. 18, Ex. 6, p. 22).   According to the Account Summary, as of April 30, 2007,

Plaintiff owed AAA $572.20. (Id.).  After reviewing the information, Plaintiff concluded

that AAA had charged her for unearned interest.  (Pl. Dep. 19).  Plaintiff did not notify

AAA or Defendant that AAA had charged her for unearned interest until she filed the

instant lawsuit because she "couldn't afford to file." (Pl. Dep. 19).  Plaintiff also failed

to tell AAA or Defendant that she believed the $134.87 collection charge was improper.

(Pl. Dep. 20).

   C.   <u>After Providing Debt Validation Information, Defendant Continues to Try to Collect the Debt</u>

   Defendant subsequently sent collection letters on May 24, 2007, June 6, 2007, July

6, 2007, and August 7, 2007, seeking $408.72 in principal, the $134.87 collection

6

charge, the former interest charges, plus interest that had purportedly accrued each month thereafter. (DSMF ¶ 17, Pl. Dep., Ex. 3, 6-10). In Defendant's collection letter dated June 6, 2007, Defendant notified Plaintiff that its collection experience with the account was submitted to national credit reporting agencies, and on July 8, 2007, Defendant notified Plaintiff that it reported the account to national credit reporting agencies as an unpaid balance. (Pl. Dep. 21-23, Ex. 8, 9). Defendant's collection letter dated August 7, 2007, seeks collection of $9.15 additional interest since placement of the account for collection by Defendant. (Pl. Dep. 23, Ex. 10).

## II.    LEGAL ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant bears the initial responsibility of asserting the basis for her motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Apcoa, Inc. v. Fid. Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990). The movant is not required, however, to negate her opponent's claim; the movant may discharge her burden by merely "'showing'-that is, pointing out to the district court-that there is an absence of evidence

to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.  After the movant has carried her burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial"; the non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like.  <u>Id.</u> at 324 (quoting FED. R. CIV. P. 56(e)).

While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, <u>Nat'l Parks Conservation Ass'n v. Norton</u>, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is material when it is identified as such by the controlling substantive law.  <u>Id.</u> at 248. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted).  An issue is not genuine if it is unsupported by

8

evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." <u>Anderson</u>, 477 U.S. at 249-50.  Thus, the Federal Rules mandate the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322.

### B.    The FDCPA is a Strict Liability Statute

Defendant first contends that summary judgment should be granted as to Plaintiff's FDCPA claims even if Defendant tried to collect interest or collection fees that Plaintiff did not owe because it did not knowingly or intentionally misrepresent the character, amount or legal status of the debt it was trying to collect from Plaintiff.   In response, Plaintiff contends that the FDCPA is a strict liability statute and that Plaintiff need not prove intentional conduct by the Defendant.

The Court agrees with Plaintiff that the FDCPA is a strict liability statute.  The FDCPA was passed in 1977 in order to protect consumers from unfair, harassing, or deceptive debt collection practices.  <u>Acosta v. Campbell</u>, No. 07-10373, 2009 WL 190089, at \*5 (11th Cir. 2009).  Thus, under the Act, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d; <u>Acosta</u>, 2009 WL

AO 72A
(Rev.8/82)

190089, at *5.  To that end, "[t]he Fair Debt Collection Practices Act prohibits 'debt collectors' from making false or misleading representations and from engaging in various abusive and unfair practices." <u>Heintz v. Jenkins</u>, 514 U.S. 291 (1995).  Pursuant to §1692e(2), the FDCPA is violated when the debt collector falsely represents "the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A); <u>Hepson v. J.C. Christensen & Assoc.</u>, No. 8:07-cv-1935-T-26EAJ, 2008 WL 4833097, at *3-4 (M.D. Fla. Nov. 5, 2008).

Defendant urges that § 1692e is violated only when the debtor is able to prove that a collector knowingly and intentionally misstates the amount of debt.  The Act, however, must be read as a whole.  <u>Turner v. J.V.D.B. & Assoc.</u>, 330 F.3d  991, 997 (7th Cir. 2003).  A reading of the construction of the Act as a whole reveals that intent is not an element that the Plaintiff must prove and instead is part of an affirmative defense that Defendant may prove.  The only place in the Act that intent is mentioned and becomes relevant is in 15 U.S.C. § 1692k(c) ("Intent") which provides:

> A debt collector may not be held liable in any action brought under this subchapter if *the debt collector* shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

<u>Id.</u> (emphasis added).  Thus, the majority of courts have concluded that the FDCPA

10

imposes strict liability on the debt collector for misstatements of the amount owed and thus, does not require a showing of intentional conduct on the part of a debt collector. Turner, 330 F.3d at 995-96; Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2nd Cir. 1993); Hepson, 2008 WL 4833097, at *3-4; Duncan v. Citibank, No. Civ. A. 06-246 JB/KBM, 2006 WL 4063023, at *4 (D.N.M. June 30, 2006) (consumer who alleges that collector misrepresented amount does not have to allege that the misrepresentation was intentional because it would render as superfluous collector's defense that the violation was an unintentional, bona fide error which was made despite maintenance of procedures adapted to avoid error); Edwards v. Niagara Credit Solutions, 586 F. Supp. 2d 1346, 1357 (N.D. Ga. 2008).  Instead, in determining whether practices or statements are intentionally deceptive, the court focuses on whether they would mislead the "least sophisticated consumer."  Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985).  Therefore, if Defendant had falsely reported the amount of interest Plaintiff owed, it would be held strictly liable unless it could prove the bona fide error defense.  See, e.g., Turner, 330 F.3d at 995-96.  Accordingly, to the extent, as Plaintiff alleges, that Defendant misrepresented the interest on Plaintiff's debt, sought to collect unearned interest, sought interest in excess of the reported interest rate when it tried to collect interest which had not accrued, sought to collect interest pursuant to a

11

usurious interest rate, and reported the incorrect amount of interest to the credit reporting agency, Defendant is strictly liable for these violations.

### C.      **The Bona Fide Error Defense**

Defendant also contends, however, that it was entitled to rely upon the bona fide error defense because, at most, it unintentionally erred because it relied solely on information about Plaintiff's interest charges supplied by AAA.  Defendant further contends that it can make out its defense because it enacted reasonable procedures to avoid error when it specifically instructed AAA to provide it with accurate information about the debt and interest charges.  Plaintiff argues that Defendant is not entitled to the bona fide error defense because Defendant has not proved the existence of policies and procedures adopted to avoid errors. In support, Plaintiff claims that relying on the creditor to provide accurate information is not a reasonable procedure to avoid error.

The Act provides an *affirmative defense* for ethical debt collectors who did not intentionally violate the Act and actively adopted procedures to prevent violations.  15 U.S.C. § 1692k(c) provides that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such

12

error." Therefore, in order to assert the bona fide error defense, Defendant has the burden of establishing that the alleged violation was (1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error. Edwards, 586 F. Supp. 2d at 1353, citing Johnson v. Riddle, 443 F.3d 723, 727-28 (10th Cir. 2006); Sparks v. Phillips & Cohen Assoc., No. 07-0477-WS-C, 2008 WL 2540679, at *10 (S.D. Ala. June 20, 2008). In proving its defense, Defendant must do more than assert in general that it maintained procedures reasonably adapted to avoid the errors, it must explain what procedures it actually employed or implemented to avoid errors and show that the procedures were reasonably adapted to avoid the specific error at issue. Johnson v. Riddle, 443 F.3d 723, 729 (10th Cir. 2006); Hepson v. J.C. Christensen & Assoc., No. 8:07-cv-1935-T-26EAJ, 2008 WL 4833097, at *5-6 (M.D. Fla. Nov. 5, 2008).

Defendant argues that any alleged error about the amount of Plaintiff's debt was bona fide error because AAA, not Defendant, placed the alleged improper charges on Plaintiff's account, and Defendant was not aware of any improper charges. (Johnson Aff. ¶¶ 5-6, 9). Defendant further argues that it maintained proper procedures to prevent errors in the amount due because its agreement with AAA included its instruction to AAA that it only claim amounts legally due. In response, Plaintiff does not dispute that

13

any misrepresentation about the amount of interest was an unintentional, bona fide error. Instead, Plaintiff contends that simply relying on the creditor to supply accurate information is not a procedure reasonably designed to prevent such errors.

Defendant is entitled to assert the bona fide error defense because Defendant's procedures were reasonably adapted to avoid error in the amount of interest collected. Defendant instructed AAA in writing and in the very contract governing the relationship between the parties, that AAA must provide "accurate information on each account" and must "promptly report any payments" it received. (DSMF ¶ 6; Johnson Aff. ¶ 8, Ex. A, p. 1). AAA was further instructed to "place only amounts over $25 that are validly due and owing by the debtor indicated. This applies to the principal, any charges added to the principal, and any rate of interest you request to be accrued." (DSMF ¶ 6; Johnson Aff. ¶ 8, Ex. A, p. 1). Because Defendant instructed its clients to only provide accurate information about any interest and indeed, physically made it part of the contract between the parties, Defendant adequately adopted procedures to prevent providing false information about the amount of the debt. See, e.g., Jenkins v. Heintz, 124 F.3d 824, 834-35 (7th Cir. 1997) (finding that collector which published in-house fair debt compliance manual, provided training seminars for firm employees collecting consumer debts and required clients to verify under oath that the charges to be collected were true

and correct adopted procedures reasonably adapted to avoid error); <u>Jenkins v. Union</u> <u>Corp.</u>, 999 F. Supp. 1120, 1141-42 (N.D. Ill. 1998) (finding that collection agency adopted reasonable procedures to avoid the imposition of the unauthorized fees by instructing clients in writing to submit only charges to which they are legally entitled and to consult with an attorney before adding any fees).  Defendant was not required to investigate and independently verify the balances AAA sought to collect as part of its reasonable procedures to avoid error.  <u>Smith v. Transworld Sys., Inc.</u>, 953 F.2d 1025, 1032 (6th Cir. 1992); <u>Jenkins</u>, 124 F.3d at 834-35.

Cases relied upon by Plaintiff are distinguishable because the collectors in those cases had not enacted *any* procedural safeguards to prevent errors.  For instance, in <u>Turner v. J.V.D.B. & Assoc.</u>, 318 F. Supp. 2d 681, 685-86 (N.D. Ill. 2004), the court determined that the collection agency's reliance on the creditor to provide information about the amount of the debt and whether the debtor filed for bankruptcy was unreasonable.   In that case, however, the collection agency did nothing to instruct the creditor that it must provide accurate information about the amount of the debt.  Indeed, in reaching its conclusion, the court distinguished <u>Jenkins v. Union Corp.</u>, *supra*, on the basis that in <u>Jenkins</u>, the collector had advised clients in writing to submit only charges to which they were legally entitled.  <u>Turner</u>, 318 F. Supp. 2d at 685-86.

15

The Court is similarly unconvinced that Plaintiff's two sentence letter stating, without explanation, that she disputed the amount owed and that AAA's documentation to validate the debt should have triggered Defendant's duty to further investigate the charges. Plaintiff's theory is that her letter and the debt validation documentation should have put Defendant on notice that AAA had applied a usurious interest rate, included interest pursuant to the usurious interest rate in the principal balance when calculating the 33% collection fee, and sought unearned interest.  Given that Defendant had contractually placed the onus on AAA to ensure that the amounts placed for collection by Defendant were accurate, Defendant did not have an additional duty to cull materials provided to Plaintiff to validate the debt abstractly in search of violations of law. Smith, 953 F.2d at 1032; Jenkins, 124 F.3d at 834-35.  Moreover, Plaintiff's letter failed to put Defendant on notice because she failed to give Defendant sufficient notice as to what was allegedly wrong with AAA's calculation of the amount owed.  Moreover, the record contains no further correspondence from Plaintiff to Defendant after Defendant provided AAA's debt validation information to Plaintiff.  Thus, Defendant had no reason to think that Plaintiff was not satisfied with the accuracy of information provided by AAA.

Similarly, the Court also disagrees that the fact that Defendant's contract with AAA indicates that Defendant should collect 18% interest per annum puts Defendant on

16

notice that the amount submitted for collection included interest calculated by applying a usurious interest rate.  In order for Defendant to have concluded that AAA applied a usurious interest rate, Defendant would have had to examine the contractual relationship between AAA and Plaintiff, review Plaintiff's account statements to calculate the amount of interest applied to Plaintiff's account, determine the amount of debt indicated in Plaintiff and AAA's original contract, and make a legal determination as what was the maximum interest rate that could apply to Plaintiff and AAA's particular contractual relationship.  See, e.g., O.C.G.A. § 7-4-2 (providing the maximum legal interest rates when a lender or creditor has committed to lend money or forbear the collection of a debt); O.C.G.A. § 7-4-16 (providing that the maximum interest rates for collection on a commercial account is 1.5% per annum).  Defendant was not required to examine Plaintiff's account to determine whether or at what rate AAA imposed interest charges. Defendant was also not required to conduct an independent investigation into the legal intricacies of the client's contract with the consumer or the debtor's legal liability for charges imposed by the creditor.  Jenkins v. Heintz, 124 F.3d 824, 833-34 (7th Cir. 1997).  Because Defendant is entitled to rely upon the bona fide error defense, summary judgment is **GRANTED** as to Plaintiff's claims regarding the Defendant's alleged misrepresentation of the amount of interest, Defendant's attempts to collect interest

17

calculated by AAA pursuant to an alleged usurious interest rate which had not accrued, and Defendant's incorrect reporting of the amount of debt to credit reporting agencies.

### D.     Whether Imposition of the Collection Fee Violated the FDCPA

Plaintiff also contends that Defendant's imposition of the collection fee was deceptive because Defendant attempted to collect a 33% collection fee when Defendant per its contract with AAA, was only due a 30% collection fee. (Pl. Br. 1-2). Defendant points out that it charged the 33% collection fee to AAA as well.  The only record support Plaintiff provides for her contention that Defendant charged AAA a 30% fee is what appears to be an unexecuted, sample agreement which does not, on its face, purport to be an agreement between Defendant and AAA. (Docket Entry 10-2).  Accordingly, Plaintiff's unexecuted sample agreement is not sufficient to raise a genuine issue of material fact as to the amount of the collection fee charged to AAA.  Thus, Defendant's averment that it charged AAA a 33% collection fee remains uncontroverted and summary judgment is **GRANTED** as to Plaintiff's claim.   (Johnson Aff. ¶ 7).

Plaintiff also contends that it was unlawful for Defendant to charge a collection fee based on a percentage of the outstanding balance owed (including principal and unlawful compounded interest) and charge her a 33% collection fee.  This claim is not found anywhere within Plaintiff's Second Amended Complaint, and Defendant does not

specifically address this claim within its briefing.  Docket Entry [34].  Even if the Court were to allow Plaintiff to amend her Complaint to include this claim, such a claim would still fail.  In support of her argument, Plaintiff relies upon <u>Kojetin v. C.U. Recover, Inc.</u>, No. 97-2273, 1999 WL 1847329 (D. Minn. Mar. 29, 1999), <u>aff'd</u>, 212 F.3d 1318 (8th Cir. 2000).  However, Plaintiff does not explain her argument as to why Defendant's collection fee based upon a percentage violates the FDCPA.  Plaintiffs making this type of claim typically rely upon 15 U.S.C. § 1692f, which disallows collection fees unauthorized by law or by an agreement between the creditor and debtor as follows:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is violation of this section:
>
> (1)    The collection of any amount (including any interest, fee, charge or expense incidental to the principal obligation) *unless such amount is expressly authorized by the agreement creating the debt or permitted by law*.

15 U.S.C. § 1692f.

Plaintiff, however, fails to explain how the collection fee was prohibited by law or her agreement.  The Court in <u>Kojetin</u> determined that the agreement between the plaintiff and her creditor only imposed responsibility on the plaintiff for actual collection costs.  There, a collector attempted to collect a 15% collection fee from the plaintiff for

19

her failure to pay her automobile note. <u>Id.</u> at * 1.  The plaintiff argued, however, that the collector misrepresented the amount plaintiff owed because the terms of the automobile note provided that plaintiff would be responsible for only the actual costs of collection. <u>Id.</u>  The collector argued that the 15% fee represented the creditor's actual cost for collecting the money from plaintiff because that was the cost of hiring the collector to undertake the collection efforts. <u>Id.</u>  The court, however, concluded that the plaintiff did not authorize her creditor to hire the collection agency on a percentage basis and had the creditor undertaken collection efforts on its own, it could not have accessed a percentage fee wholly unrelated to the actual cost of its collection efforts. <u>Id.</u> at *2.

The instant case is distinguishable, however, because the parties in this case did not agree to limit Plaintiff's accountability solely to actual costs. <u>See, e.g.,</u> <u>Cisneros v. Neuheisel Law Firm, P.C.</u>, No. CV06-1467-PHX-DGC, 2008 WL 65608, at *2-3 (D. Arizona Jan. 3, 2008).  The agreement signed by Plaintiff indicates Plaintiff's express assent to be "responsible for any and all interest charges incurred and reasonable collection fees that will be added."  (Pl. Dep., Ex. 6, p. IC 0025).  Given that a fee is defined as "a sum paid or charged for a service," the agreement clearly envisions that Plaintiff would be responsible for collection fees paid to third party collection firms. (2009) Merriam-Webster Online Dictionary,

20

http://www.merriam-webster.com/dictionary/fee; see also Gathuru v. Credit Control Servs., 623 F. Supp. 2d 113, 119-20 (D. Mass. 2009) (finding that agreement providing for the plaintiff's payment of "collection costs" was broad enough to encompass percentage collection fees).  Nor can the Court conclude that the 33% collection fee in this case was unreasonable in violation of Plaintiff's agreement.  Plaintiff presents no evidence as to the amount of costs involved to collect on the Plaintiff's account or that the $134.87 fee was afield of any prevailing market rates for collections.

Moreover, Plaintiff fails to point to any state or federal law which was violated by Defendant's decision to charge a collection fee expressed as a percentage of the amount owed to AAA.  Additionally, nothing within the Act prohibits a collection fee based upon a percentage.  15 U.S.C. § 1692 et seq.; see also Gathuru, 623 F. Supp. 2d at 119.  Furthermore, Defendant was not deceptive about the fee either with its client, AAA, or with Plaintiff.  Plaintiff was advised on each collection letter the exact amount of the fee.  Plaintiff was also informed that the amount of her debt could change due to interest or other charges that could be added to the account after the date of the letter. (Pl. Dep., Ex. 3).  Therefore, summary judgment is **GRANTED** as to Plaintiff's claim that Defendant's collection of the 33% collection fee violated the FDCPA.

21

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff also moves for summary judgment on the same grounds set forth in her opposition to Defendant's summary judgment motion.   As discussed above, even viewing the facts in the light most favorable to the Plaintiff, Plaintiff's evidence does not establish violations of the FDCPA.   Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**.

### CONCLUSION

Fore the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.   Docket Entries [43, 54].

**SO ORDERED**, this 25th day of September, 2009.


s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE